# UNITED STATES BANKRUPTCY COURT
## for the
## DISTRICT OF MASSACHUSETTS

```
=================================================
                                                *
In Re:                                          *
                                                *  Chapter 11
    The Ground Round, Inc., et al.,             *  No. 04-11235
                                                *  Jointly Administered
                    Debtors                     *
                                                *
=================================================
                                                *
    Joseph A. Abboud et al.,                    *
                                                *  Adversary Proc.
                    Plaintiffs                  *  No. 04-01390
                                                *
            vs.                                 *
                                                *
    The Ground Round, Inc.,                     *
                                                *
                    Defendant                   *
                                                *
=================================================
```

### MEMORANDUM OF DECISION ON COMPLAINT SEEKING DETERMINATION OF THE INTEREST OF DEBTORS' ESTATE IN PENNSYLVANIA LIQUOR LICENSE

**Introduction**

The plaintiffs, Joseph A. Abboud, Elias N. Dow, and Wazen J. Wyzen, a Pennsylvania partnership, and Byblos, Inc. (collectively "Landlord") brought this adversary proceeding to determine the interest of debtor The Ground Round, Inc. ("Debtor") in the Pennsylvania liquor license (the "License") used in connection with leased premises at West Chester, Pennsylvania (the "Property"). Landlord also seeks the return of the License.

Q:\HILLMAN\Abboud.wpd                        1

Landlord filed a motion for summary judgment. Debtor filed an opposition to the motion coupled with a cross-motion for summary judgment. After a hearing, I took the motions under advisement. Landlord filed a post-hearing memorandum. This is a core proceeding.[1] After consideration, I will grant the relief requested in the complaint.

## The Applicable Standard

Fed. R. Civ. P. 56, made applicable to adversary proceedings by Fed. R. Bankr. P. 7056, governs motions for summary judgment. It provides that

> "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The burden of proof is upon the moving party in the first instance.[2] To defeat the motion, the opposing party must produce substantial evidence of a genuine dispute as to a material fact.[3] A material fact is one which has the "potential to affect the outcome of the suit under applicable law."[4] In making its determination, the court must view the facts and draw inferences in the light most favorable to the party opposing the motion, and must indulge all inferences favorable to that party.[5] Summary judgment must be denied if inferences

---

[1] 28 U.S.C. § 157(b)(2)(A), (K), (O).

[2] *In re* Wang Laboratories, Inc., 155 B.R. 289, 290 (Bankr. D. Mass. 1993).

[3] Darr v. Muratore, 8 F.3d 854, 859 (1st Cir. 1993); Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied* 425 U.S. 904 (1976).

[4] Fed. Deposit Ins. Corp. v. Anchor Prop., 13 F.3d 27, 30 (1st Cir. 1994) (quoting Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993)).

[5] Morris v. Gov. Dev. Bank, 27 F.3d 746, 748; Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988).

necessary to the judgment are not mandated by the record; summary judgment is precluded "unless no reasonable trier of fact could draw any other inference from the 'totality of the circumstances' revealed by the undisputed evidence".[6]

### Facts

There appear to be no material disagreements as to the facts. The issue before me is one of law.

On June 9, 1977, Landlord leased the Premises to Howard Johnson Company, Inc.[7] (the "Lease"). The Lease was for a term of ten years plus six five year extensions. It was to commence 120 days after all necessary permits, including a liquor license, were obtained.

> An addendum to Article II of the Lease provides that
>
> Lessor shall transfer to Lessee in consideration of this Lease and One ($1) Dollar, the liquor license of Lessor at the demised premises, which is a full-service restaurant license with Sunday Sales Permit, and which Lessor warrants is not subject to any claims or violations. Lessee shall pay for application fees and expenses of such transfer and Lessor shall execute documents necessary for such transfer as requested by Lessee. At the termination of this Lease, Lessee shall, in consideration of this Lease and One ($1) Dollar transfer such liquor license to Lessor free of all claims or violations and Lessor shall then pay for all application fees and expenses.

The only provision of the Lease which might apply to the present dispute is Article VII, captioned "Where Lessor Pays Lessee's Obligations." The content of the paragraph is broader than the title:

---

[6] Blanchard v. Peerless Ins. Co., 958 F.2d 483, 488 (1st Cir. 1992).

[7] Ultimately Debtor succeeded to the interest of the lessee. For convenience I shall include the original lessee and its predecessors up to and including the final transferee as within the meaning of "Debtor".

> Whenever the Lessee shall breach or fail to perform any of the covenants or provisions of this lease, and such failure or breach shall cause the Lessor or [sic] incur any damages or expenses whatsoever, then and in that event such damages or expenses so incurred by the Lessor, with legal interest thereon and including penalties, costs and reasonable attorneys' fees may be added to the next accruing rental payment due under the provisions of this lease.

On January 31, 1978, Byblos, Inc. acquired the License and assigned it to Debtor.

On February 19, 2004, Debtor filed a petition under Chapter 11. On July 30, 2004, Debtor filed a motion to reject the Lease.[8] In that motion Debtor declared that "The Debtors shall retain any interest in the liquor licenses associated with the Rejected Locations, however."[9] On August 23, 2004, I granted the motion to reject by endorsement.[10]

### Positions of the Parties

### Landlord

Landlord makes alternative arguments supporting its efforts to regain the license. It argues that Pennsylvania law in effect at the time the Lease came into existence did not permit a security interest to be granted in a liquor license, and so Landlord cannot be accused of having failed to perfect a security interest in the License. In its complaint it contends that the transfer of the License to the Debtor created a bailor-bailee relationship wherein Debtor held title to the License as bailee for the mutual benefit of Landlord and Debtor. It contends that specific performance is available to it in this case, whether Pennsylvania or Massachusetts law is applicable.

---

[8] Case No. 04-11235, Docket No. 1084.

[9] *Id.*, ¶ 12.

[10] No. 04-11235, Docket No. 1177.

### Debtor

Debtor argues that the rejection of the Lease rendered any remaining obligations under it unenforceable. It denies that it holds the License as a bailee or that specific performance is available. Debtor additionally argues that the interest of Landlord in the License was a secret lien which Debtor may avoid pursuant to 11 U.S.C. § 544. Ultimately, it contends that the only right Landlord has against it is an unsecured claim resulting from the rejection.

The cases and other authorities cited by the parties will be discussed below.

### Discussion

The Lease does not contain a choice of law provision. Landlord contends that Pennsylvania law is applicable, and Debtor does not appear to seriously dispute that argument. Since we are here concerned with a lease of Pennsylvania real estate, that conclusion is logical and supported by the authorities cited by Landlord.[11] I will accept Pennsylvania law as controlling.

Landlord disavows any claim to a security interest in the License. It argues that in 1977 Pennsylvania law did not permit such an interest in a liquor license and further that its rights are "contractual," meaning, I assume, that its rights arise from some portion of contract law other than the Uniform Commercial Code.

As to the first point, in 1977 Pennsylvania statutory law provided the following regarding liquor licenses:

---

[11] "Memorandum in Support of Motion for Summary Judgment of Joseph P. Abboud, Elias N. Dow, Wazen J. Wyzen and Byblos, Inc.(Collectively "Lessor")", Docket No. 13, pp. 4-5.

> In the event that any person to whom a license shall have been issued under the provisions of this article shall become insolvent, make an assignment for the benefit of creditors, become bankrupt by either voluntary or involuntary action, the license of such person shall be immediately placed in safekeeping with the board for the balance of the term of the license and for an additional period of one year upon application to the board by the trustee, receiver, or assignee. The trustee, receiver, or assignee shall have, during said period of safekeeping, the same rights, benefits and obligations as to the license as the person to whom the license shall have been issued, including the right to transfer the license subject to the approval of the board. *The license shall continue as a personal privilege granted by the board and nothing herein shall constitute the license as property.*[12]

Landlord uses the emphasized language as the basis of the contention that it would not have been possible for Landlord to obtain a security interest in the License at the time. This position is supported by Pennsylvania case law[13] but is irrelevant. The creation of a security interest requires an agreement that creates or provides for a security interest[14] and there is no such agreement here. Nor could there be, for a security interest "means an interest in personal property or fixtures,"[15] and the license falls into neither of those categories. Those considerations moot Debtor's argument that Landlord holds a secret lien; it has no lien of any nature.[16]

---

[12] 47 Pa. Cons. Stat § 4-468(b.1). (emphasis added).

[13] 1412 Spruce, Inc. v. Commonwealth, 504 Pa. 394, 474 A.2d 280 (1984).

[14] 13 Pa. Cons. Stat. § 9102. *See* cases collected at William C. Hillman, DOCUMENTING SECURED TRANSACTIONS 5-7, n. 38 (2nd ed. 2005). The previous version of Article 9 of the Uniform Commercial Code had the same definition.

[15] 13 Pa. Cons. Stat. § 1201.

[16] The authorities cited by Landlord holding that the 1987 amendment cannot be applied retroactively are persuasive and I accept them. "Response of Joseph P. Abboud, Elias N. Dow, Wazen J. Wyzen and Byblos, Inc. (Collectively "Lessor")" in Opposition to Debtors' Cross-Motion for Summary Judgment, Docket No. 13, pp. 5-7.

Landlord next argues that the License is property which can be and was the subject of a bailment. It bases this contention upon the language added to the licensing statute in 1987, that "as between the licensee and third parties, the license shall constitute *property*."[17] It construes "property" to mean "personalty" which can be the subject of a bailment.

The problem with this position is that the amendment was not in force at the time the Lease was executed.[18] In fact the operative law of that time, quoted above, provided that the License was merely "a personal privilege" and, more explicitly, "nothing herein shall constitute the license as property."[19] A bailment begins with the delivery of personalty.[20] There cannot be a bailment of a mere personal privilege.

What interest, then, was created by the Lease? The case closest to that at bar is *O'Neill v. Keegan*, decided by the Pennsylvania Supreme Court in 1954.[21] In that case, the lessor transferred his liquor license to Keegan an part of a lease transaction. The lease provided that the license was not to be removed or transferred from the premises during the period of the lease. It further provided that

> in the event Keegan 'for any reason, foregoes that leasing of the premises,' he was to give plaintiff 'the first refusal for the retransfer of the liquor license,' and that Keegan was 'not to sublet the premises or transfer the license to a

---

[17] 47 Pa. Cons. Stat. § 4-468(d).

[18] Landlord's argument about retroactivity is also correct in this context. Here, of course, it turns around and bites the other way.

[19] 47 Pa. Cons. Stat. § 4-468(b.1).

[20] Lear, Inc. v. Eddy, 749 A.2d 971 (Pa. Super. 2000); cases collected at Richard A. Lord, 19 WILLISTON ON CONTRACTS § 53:2 (4th ed. 2004).

[21] 376 Pa. 606, 103 A.2d 909 (1954).

third party within the five year period without the approval of the plaintiff.[22]

At the expiration of the lease, Keegan refused to transfer back the liquor license. O'Neill filed a bill in equity to compel the transfer and to restrain transfer of the license to anyone else. Justice Musmanno, writing for a unanimous court[23] upheld the lower court's finding for the plaintiff:

> Was there an absolute sale of the liquor license by the plaintiff to the defendants or was the transfer of the license (as the Chancellor found) only a temporary one running with the life of the lease? . . . [T]here can be no doubt that the Chancellor was justified in law and in fact in resolving the issue in favor of the plaintiff.
>
> . . . .
>
> All the facts, logic and common sense of the situation argue against the absolute sale of the liquor license. It will be enough merely to enumerate some of those reasons:
>
> 1. The defendants paid no consideration for this very valuable property, the liquor license.
>
> 2. If the plaintiff had intended an absolute sale of the license, he would not have included in the agreement the provision that the defendants were *not* to transfer the license during the 5 year term. With an absolute sale and a complete divestment of title, the further travels of the license could not be of any interest to the plaintiff.
>
> 3. A witness . . . testified that the defendants orally agreed that the license was to be transferred back to the plaintiff at the termination of the 5-year lease.
>
> 4. The plaintiff's establishment was fitted and equipped for the sale of liquor. Reacquiring the restaurant-bar without the liquor license would be like having a ship on dry land. It cannot be assumed that the plaintiff could consciously and willingly plan for himself so assured a future economic disaster.

---

[22] 376 Pa. at 608, 103 A.2d at 910.

[23] Not a common situation for this judge. *See* JUSTICE MUSMANNO DISSENTS: THE DISSENTING OPINIONS OF JUSTICE MICHAEL A. MUSMANNO (1956). The book has 576 pages and only covers the period of January, 1952 to September, 1955.

5. Nor could the plaintiff have applied for another liquor license, since the quota of licenses in Pleasant Mount Township was already oversubscribed.[24]

Debtor argues that the present case is not a parallel; that when, as here, its intention is to sell the License, Landlord would be able to bid at the sale and hence the License is not unique, undercutting the argument for specific performance. I am not convinced. I hold that the Pennsylvania decisions[25] stand for the proposition that *any* Pennsylvania liquor license is unique and a state court could order retransfer in an action for specific performance.

Of course, those cases do not involve the bankruptcy of one of the parties. The next issue is whether Debtor's bankruptcy and subsequent rejection of the Lease affect the outcome. I have previously held that rejection of a contract in bankruptcy is a breach and not a termination.[26] Given that, it is necessary to consider whether the requirement that the License be transferred has survived.

Landlord urges me to follow Judge Gorton's decision in *Sir Speedy, Inc. v. Morse*,[27] but I cannot accept that proposition in the abstract since local authority also includes Judge Queenan's decision, *Maids Int'l., Inc. v. Ward (In re Ward)*,[28] and both can be related to the issue presently before me. These cases involve franchise agreements containing

---

[24] 376 Pa. at 608-610, 103 A.2d at 911.

[25] *See., e.g.,* Cochrane v. Szpakowski ,355 Pa. 357, 49 A.2d 692 (1946); Tomb v. Lavalle, 298 Pa. Super. 75, 80, 444 A.2d 666, 669 (1982).

[26] *In re* Docktor Pet Centers, Inc., 1992 WL 189634, *4 (Bankr. D. Mass. 1992), *vacated on other grounds sub nom.* Ralls v. Docktor Pet Centers, Inc., 177 B.R. 420 (D. Mass. 1995). *See also* Societe Nationale Algerienne, etc. v. Distrigas Corp., 80 B.R. 606, 608 (D. Mass. 1987).

[27] 256 B.R. 657 (D. Mass. 2000).

[28] 194 B.R. 703 (Bankr. D. Mass. 1996).

covenants not to compete, the latter intended to take effect at the end of the franchise relationship. This is a direct parallel to the provision for reconveyance of the License in this case which also takes effect when the primary relationship ends.[29]

In *Maids*, the operative language of the agreement was as follows:

> XV. COVENANTS
>
> . . . .
>
> C. FRANCHISEE further covenants that for a period of two (2) years after the termination or nonrenewal of the franchise, regardless of the cause of termination, it shall not, either directly or indirectly, for itself, or on behalf of or in conjunction with any other person, persons, partnership or corporation, own, maintain, engage in, or participate in the operation of a maintenance and cleaning service system within a radius of fifty (50) files of the area designated hereunder or any then existing The Maids Unit Franchise.
>
> . . . .
>
> E. FRANCHISEE acknowledges that a violation of any covenant in this Paragraph will cause irreparable damage to FRANCHISOR, the exact amount of which may not be subject to reasonable or accurate ascertainment, and therefore, FRANCHISEE does hereby consent that in the event of such violation, FRANCHISOR shall as a matter of right be entitled to injunctive relief. . . .In the event FRANCHISOR brings suit to enforce any provision hereof, FRANCHISOR shall be entitled to receive, in addition to any relief or remedy granted, the cost of bringing such suit, including reasonable attorney's fees. The covenants set forth in this Paragraph XV shall survive the termination or expiration of this agreement.
>
> . . . .
>
> XXVIII. LIABILITY FOR BREACH
> In the event of any default on the part of either party hereto, in addition to any other remedies of the aggrieved party, the party in default shall pay to the aggrieved party all amounts due and all damages, costs and expenses, including reasonable attorneys fees, incurred by the aggrieved party as a result of any such default.[30]

The franchise period ended and the soon-to-be debtors changed the signage on the

---

[29] *See also* Societe Nationale Algerienne, etc. v. Distrigas Corp., 80 B.R. 606 (D. Mass. 1987) where an arbitration clause was held to survive rejection of a contract by a debtor.

[30] *Id.* at 705-706.

business and continued under another name. Litigation against them ensued followed rapidly by a petition under Chapter 7.[31] The franchisor then commenced an adversary proceeding to obtain the injunctive relief provided for in the quoted language.

Judge Queenan focused on the wording of the definition of "claim" in the Bankruptcy Code:

> "claim" means—
>     (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; or
>     (B) right to an equitable remedy for breach or performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured[32]

He concluded that the quoted language of the franchise agreement gave the franchisor "the right to obtain either damages for the Debtors' future competition or an injunction against the competition."[33] As a result, franchisor held a claim which could be discharged in bankruptcy, and injunctive relief was denied.[34]

*Sir Speedy* was decided four years later. The facts were similar but the opinion does not quote any language from the franchise agreement relating to money damages.[35] On a previous appeal in that case, Judge Gorton had reversed the bankruptcy court and held that the breach of a non-competition covenant "does not give rise to a right to payment and

---

[31] *Id.* at 707.

[32] 11 U.S.C. § 101(5).

[33] 194 B.R. at 712.

[34] *Id.* at 714-715.

[35] 256 B.R. at 658.

thus is not a 'claim' under § 101(5)(B)."[36] On remand the bankruptcy court declined to grant injunctive relief on the basis that the rejection of the franchise agreement constituted a termination of all obligations under that agreement.[37] A second appeal followed.[38] Based upon his prior decision, Judge Gorton determined that the plaintiff was entitled to injunctive relief because the non-competition agreement did not constitute a claim, reversed and once again remanded.[39]

As noted in both of these decisions, the cases are in disarray. It is possible to reconcile *Maids* and *Sir Speedy* if one assumes that there was no language in the latter's franchise agreement which could be construed as creating a right to money damages. Accepting that as the starting point, I must consider where the Lease language falls.

The Lease language is quoted above.[40] I hold that the Article VII language regarding money damages does not connect with the Article II language regarding the retransfer of the License. As a result, there is no money damages provision tied to the License and the case is controlled by *Sir Speedy*, which I accept as a proper statement of the law even though it is not binding upon me.[41] The rights of Landlord do not constitute a claim and

---

[36] *Ibid.*

[37] *Ibid.*

[38] *Ibid.*

[39] *Id.* at 660.

[40] *See* text following footnote 7.

[41] The latter part of this sentence indicates my adherence to one of the views in this regard. This dispute continues. *See* First of America Bank v. Gaylor (*In re* Gaylor), 123 B.R. 236 (Bankr. E.D. Mich 1991); *cases collected at* Paul Steven Singerman and Paul A. Avron, *Of Precedents and Bankruptcy Court Independence*, A.B.I. J. 1 (Jul/Aug

hence may not be discharged. As a result, injunctive relief is appropriate.

## Conclusion

For the stated reasons, I will enter an order granting Landlord's motion for summary judgment and denying Debtor's cross-motion. Landlord shall present a form of order directing Debtor to tender the license to Landlord for transfer to it. All costs of the transfer are to be borne by Landlord.

William C. Hillman
United States Bankruptcy Judge

Dated: June 6, 2005

Counsel appearing:

    Eugene J. Malady, Media PA for Landlord
    Harold B. Murphy, Andrew G. Lizotte, Hanify & King, Boston MA for Debtor

---

2003).

Q:\HILLMAN\Abboud.wpd      13